UNITED STATES of America, Appellee,

v.

**Oswald A. ROWE a/k/a Pete, Appellant.**

**No. 89–1893.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided Aug. 3, 1990.

Douglas Dalgleish, Kansas City, Mo., for appellant.

Thomas H. Newton, Kansas City, Mo., for appellee.

Before WOLLMAN, FLOYD R. GIBSON, Circuit Judges and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

In this appeal a drug dealer convicted for violation of 21 U.S.C. 841 complains that at sentencing a half gram sale made by a confederate should not have been counted by the District Court [1] in calculating his guideline sentence, and that double time should not have been given pursuant to 21 U.S.C. 845a for sales made within 1000 feet of a schoolhouse.[2] We affirm.

Appellant Oswald Rowe and his confederate Percival Hawkins apparently lived together in a housing project at No. 1910 West Pennway, within 1000 feet of Faxon Montessori, a public school.[3]

Having made a purchase of crack cocaine from Hawkins in front of No. 1918 West Pennway in June, 1988,[4] detectives discussed buying crack with Hawkins in front of 1910 West Pennway on October 1, 1988. Hawkins sent them in to see Rowe, where a .40 gram purchase was made from Rowe. On October 3 the detectives returned to No. 1910 and saw Rowe and Perkins sticking their heads out the window. Invited in, the detectives made a .30 gram purchase of

crack from Rowe. On October 10 they returned to No. 1910, and Hawkins said he was "all out" of cocaine but could get some. Hawkins yelled to four unidentified individuals standing in front of No. 1918 and after a brief exchange of words with them went to No. 1918 and returned with two baggies which the detectives purchased.[5] This .50 gram purchase is the basis of appellant's objection to the sentence.

On October 12 the detectives returned to No. 1910, but could make no purchase. Hawkins and Rowe tried to procure crack by telephone calls and Rowe was driven by the officers to several locations but without success. Another visit to Perkins and Rowe at No.1910 on October 13 proved abortive.[6]

On these facts we are convinced that the close association and "working relationship" between appellant and his confederate Hawkins during the October investigation by officers of the activities of Rowe and Hawkins in the housing project close to the schoolhouse was sufficient to justify the inclusion of the half-gram sold by Hawkins on October 10, 1988, in computing Rowe's sentence. *U.S. v. Mann,* 877 F.2d 688, 690 (8th Cir.1989).

Likewise we conclude that the enhancement of Rowe's sentence under 21 U.S.C. 845a was proper. It is true, as Rowe strenuously argues, that his sales (so far as evidence in this case is concerned) were all to adult enforcement agents, and not to schoolchildren. But that does not make the "schoolhouse statute" unconstitu-

---

* The Honorable Edward Dumbauld, Senior United States District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Howard F. Sachs, of the Western District of Missouri.

2. There is a possibility that the instant case may become moot. The District Court imposed the guideline minimum as an "economy measure", assuming that Rowe will be deported. Transcript of sentencing (hereinafter Tr.) 17–19.

3. Appellant's brief, 10, 25. A surveyor testified that "the distance from 1910 Pennway to the school property line is 257.3 feet, while the distance from 1910 West Pennway to the school building itself is 423.0 feet." *Ibid.,* 15.

4. The June purchase was not counted in Rowe's sentence.

5. Appellant's brief, 11–12.

6. *Ibid.,* 13–14. A .20 gram amount found at No. 1918 upon execution of a search warrant was not counted by the District Court. Tr. 13.

tional as applied to appellant.[7]

Mere proximity is indeed pertinent.[8] Sales *to* schoolchildren directly are not the only type of drug sales which have a harmful impact on schoolchildren. "Congress sought to create a drug-free zone around schools." *U.S. v. Falu* 776 F.2d 46, 50 (2d Cir.1985 [Feinberg, C.J.]).

Congress wisely sought to protect children from the evil influence of drug traffickers plying their nefarious trade in the immediate vicinity of schools, at such close proximity that they are visible from the school.[9]

The confluence and congregation of drug dealers and other undesirable characters on the very streets along which children pass coming to or going from school should be discouraged. The evils at which Congress struck in the "schoolhouse statute" are not imaginary or insignificant. Congress has ample constitutional power to create a drug-free environment in the vicinity of schools. "Congress wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools." [10] Whether automatic doubling of sentences (like mandatory sentences in general) is a desirable remedy is a matter of legislative policy. We find no error in the District Court's judgment, which is hereby

AFFIRMED.

---

7. Rowe attacks the "schoolhouse statute" on due process and equal protection grounds. Such a challenge was rejected in *U.S. v. Agilar,* 779 F.2d 123, 125–26 (2d Cir.1985 [Newman, J.]), and in *U.S. v. Jones,* 779 F.2d 121, 122 (2d Cir.1985 [Oakes, J.]). See also *U.S. v. Haynes,* 881 F.2d 586, 590–91 (8th Cir.1989).

8. It will be time to deal with hypothetical cases such as sales made in aircraft flying low over the schoolhouse, and the like, when and if they ever arise.

9. Tr. 14.

10. 779 F.2d at 125. See also 779 F.2d at 123.