**UNITED STATES of America, Appellee,**

v.

. **Zaida RODRIGUEZ, Appellant.**

**No. 91–1252.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Dec. 13, 1991.

Decided April 17, 1992.

---

9. We do not at all address the pendent state claims alleged by McArdle.

Michael M. Baylson, U.S. Atty., E.D.Pa., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Robert A. Zauzmer, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Robert F. Simone, Philadelphia, Pa., for appellant.

Before: BECKER, GREENBERG and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Zaida Rodriguez appeals from a judgment of sentence following conviction for two drug-related offenses. Rodriguez advances arguments concerning the interpretation and constitutionality of the so-called "schoolyard" provision of the federal drug laws, then 21 U.S.C. § 845a (now recodified at 21 U.S.C. § 860). She also challenges the admission of evidence that she claims was irrelevant and unfairly prejudicial. We will affirm.

### I.

In June 1990, two Philadelphia police officers assigned to the Drug Enforcement Administration (DEA) Task Force, Ronald Abel and Gary Martinez, observed a woman whom they later identified as Rodriguez driving away from 3062 Boudinot Street. The officers followed and watched as the woman stopped at 28 East Silver Street and entered the house, which is located within 1000 feet of an elementary school. The woman soon returned to her car, carrying a white pillowcase that the officers believed contained cocaine. As the woman drove off with the officers in pursuit, packages later identified as containing cocaine were thrown out of one of the car's windows. The officers stopped to retrieve the packages, and the woman escaped.

Rodriguez was indicted a few months later for four drug-related offenses.[1] After two of the four counts were dismissed, a jury trial was held on the two remaining charges. The jury found Rodriguez guilty of both charges, possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and violating the schoolyard provision. Rodriguez appealed.

### II.

Rodriguez first argues that there was insufficient evidence that she violated the schoolyard provision.[2] This statute pre-

---

1. The indictment charged that Rodriguez violated 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine) (count one); 21 U.S.C. § 841(a)(1) (possession of cocaine with intent to distribute) (count two); 21 U.S.C. § 845a (recodified as 21 U.S.C. § 860 (the "schoolyard" statute)) (count three); and 21 U.S.C. § 856(a) (maintaining a building for the purpose of storing a controlled substance) (count four).

2. The government seems to suggest that we need not decide whether the district court correctly interpreted the schoolyard provision because Rodriguez's conviction for that offense did not affect her sentence. We disagree.

scribes enhanced penalties for, among others:

> Any person who violates [21 U.S.C.] 841(a)(1) or [21 U.S.C.] 856 ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility.

21 U.S.C. § 860(a).

Rodriguez argues that this provision does not apply to a defendant who possesses drugs within 1000 feet of a school but intends to distribute them elsewhere.

Under the Sentencing Guidelines, the offense level for Rodriguez's conviction under 21 U.S.C. § 841(a)(1) was 28, and the offense level for her conviction under the schoolyard provision was 30. See U.S.S.G. §§ 2D1.1 and 2D1.2. Under U.S.S.G. §§ 3D1.2(d) and 3D1.3(b), these two counts were grouped together, and her offense level was based on the count with the highest offense level. The district court, however, granted a downward departure of two levels (from 30 to 28) based on "the defendant's family, her health, the requirements of her child, and the possibility that in constructing the guideline, the Commission did not take into account that a person might possess drugs within one thousand feet [of a school] but intend[ ] to distribute them elsewhere." App. at 370a. The government has not contested this departure, and therefore we express no view as to whether it was permissible.

The government is correct that the offense level used in calculating the defendant's sentence, 28, was the same as the offense level for the conviction under 21 U.S.C. § 841(a)(1) alone. But because we cannot be sure that the sentencing judge would not have granted the two-level downward departure if the defendant had been convicted on this charge alone (and thus employed an offense level of 26 in calculating her sentence), we cannot be certain that the schoolyard provision did not affect her sentence. While one of the sentencing judge's cited grounds for departure related solely to the schoolyard count, the others did not.

**3.** Rodriguez objects to the following portion of the jury instruction:

> In order to convict the defendant of possession of a controlled substance—and, as I told you, cocaine is a controlled substance—within 1,000 feet of a school, the Government does not have to prove that the defendant specifi-

Rather, she asserts, the statute requires proof of an intent to distribute drugs within 1000 feet of a school. She claims that, while there was evidence that she possessed cocaine within 1000 feet of a school, there was no evidence that she intended to distribute the cocaine within 1000 feet of a school. Moreover, she contends that the district court committed reversible error by failing to instruct the jury that proof of an intent to distribute the cocaine within 1000 feet of a school was required.[3] There is no indication that Rodriguez raised this issue of statutory construction in the district court.[4] Consequently, we could reverse her conviction only if we found plain error.[5]

**A.** To date, one other court of appeals has addressed the issue of statutory construction presented here. In *United*

cally knew that the school was less than a thousand feet away.

The Government doesn't have to prove that the possession occurred during school hours or that the school was in session, or that the defendant intended to distribute the narcotics to school children.

It is sufficient for the Government to prove that the defendant knowingly possessed with intent to distribute a controlled substance and that this offense was committed, was actually committed within 1,000 feet of a school.

App. at 315a–316a; Brief of Appellant at 9.

**4.** Before charging the jury, the district court suggested that the two remaining counts be combined into one on the basis that Count Two—possession with intent to distribute—is a "'lesser-included offense' in Count Three"—possession with intent to distribute near a school: "[E]ither the Government has established that she possessed it within a thousand feet of the school, or the Government hasn't established possession at all." App. at 280a–281a. Counsel for Rodriguez agreed: "I agree ... There is no way that any Jury can bring back 'Guilty/Not Guilty' on the two Counts." App. at 281a. Moreover, after the jury returned its verdict, counsel for Rodriguez stated, "I had no objections to the Charge." App. at 336a.

**5.** Fed.R.Crim.P. 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain errors are those that 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.'" *Government of the Virgin Islands v. Smith,* 949 F.2d 677, 681 (3d Cir.1991), *quoting United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

*States v. Wake,* 948 F.2d 1422 (5th Cir. 1991), the Fifth Circuit held that the schoolyard provision applies to a defendant who possesses drugs within 1000 feet of a school even if he or she intends to distribute them elsewhere. *See also State v. Ivory,* 124 N.J. 582, 592 A.2d 205 (1991) (interpreting similarly worded state statute). We agree with the Fifth Circuit's analysis and its conclusion.

First, we believe that this interpretation is supported by the language of the schoolyard statute. This provision applies to three types of criminal conduct: distributing drugs, possessing drugs with the intent to distribute, and manufacturing drugs. In cases involving the distribution or manufacture of drugs, it is clear that this provision requires that the *actus reus* must occur within 1000 feet of a school. Accordingly, it is reasonable to interpret the statute as applying in the same way to the offense of possession with intent to distribute. Since the *actus reus* for this offense is possession, it follows that possession of the drugs, not the intended location for distribution, must be located within 1000 feet of a school.

This interpretation is also supported by Congress' decision to make the schoolyard provision applicable to the manufacture of drugs within 1000 feet of a school. By prescribing enhanced penalties for the manufacture of drugs near a school (regardless of the intended site of distribution), Congress made clear that it did not wish to confine the schoolyard statute to cases in which a defendant distributes or intends to distribute drugs near a school. Rather, Congress was more broadly concerned about serious drug crimes that occur in proximity to schools.

B. The legislative history supports this interpretation of the schoolyard provision. As originally enacted in 1984, the schoolyard statute applied only to the distribution of drugs within 1000 feet of a school. In 1988, however, Congress enacted the amendment that added possession with intent to distribute to the list of covered offenses. In an analysis of the 1988 amendment submitted on behalf of the Senate Judiciary Committee, Senator Biden stated [6]:

> Section 845a [now 860] of title 21 currently makes it a crime to distribute or to manufacture controlled substances within 1,000 feet of a school. This section adds "possession with intent to distribute" to the list of offenses covered by this statute *so that the enhanced penalties would apply to someone apprehended near a school with a quantity of drugs sufficient to indicate an intention to distribute.*

134 Cong.Rec. S17,360, S17,365 (daily ed. Nov. 10, 1988) (statement of Senator Biden) (emphasis added). The identical analysis was also offered by Senator Nunn, on behalf of Senators Byrd, Dole, Rudman, Moynihan, Rudman, D'Amato, Wilson, Gramm, and "numerous others." 134 Cong.Rec. S14,067, S14,071 (daily ed. Oct. 3, 1988).

This analysis provides clear evidence that Congress did not intend to require proof of an intent to distribute drugs near a school. When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone. *See United States v. Ocampo,* 937 F.2d 485, 488 (9th Cir.1991); *United States v. Brown,* 921 F.2d 785, 792 (8th Cir.1990); *United States v. Montoya,* 782 F.2d 1554, 1555 (11th Cir.1986). By contrast, more evidence is logically required before an inference may be drawn concerning the location where the defendant intended to distribute the drugs. The statement endorsed by Senator Biden and his colleagues clearly shows, however, that they did not think that the schoolyard provision required any such additional evidence. Rather, they wanted the schoolyard provision to apply

---

**6.** Senator Biden explained his view of the significance of this analysis as follows:

> As chairman of the Judiciary Committee, I, along with Senator Thurmond, the ranking minority member, took the lead in drafting the criminal law provisions that are contained in the drug bill. I have drafted a section-by-section analysis of those provisions, and believe it will be helpful to those who wish to know the intent of the drafters of this legislation.

whenever a defendant is "apprehended near a school with a quantity of drugs sufficient to indicate an intention to distribute." This statement thus provides clear evidence that proof of an intent to distribute near a school is not necessary. *See United States v. Wake*, 948 F.2d at 1432.

C. Rodriguez's contrary interpretation was adopted by several district court decisions handed down prior to *Wake*. *United States v. McDonald*, 777 F.Supp. 44 (D.D.C.1991); *United States v. Testa*, 768 F.Supp. 221 (N.D.Ill.1991); *United States v. Coates*, 739 F.Supp. 146, 152–153 (S.D.N.Y.1990); *United States v. Roberts*, 735 F.Supp. 537 (S.D.N.Y.1990); and *United States v. Liranzo*, 729 F.Supp. 1012 (S.D.N.Y.1990). We find major flaws, however, in all four of the arguments on which these decisions were based.

1. In *United States v. Liranzo*, 729 F.Supp. at 1014, the court relied on the grammatical rule that a modifier should be placed as close as possible to the word it modifies. Thus, the court asserted (*id.*) that the statutory phrase "within 1000 feet" modified "with intent to distribute" rather than "possessing." The court elaborated (*id.*): "If the other meaning were intended, the statute would be expected to read 'possessing, within one thousand feet of a school, with intent to distribute a controlled substance....'"

This argument overlooks the important fact that the phrase "within one thousand feet" modifies "distributing" and "manufacturing," as well as "possessing with intent to distribute." Thus, in order to place the phrase "with intent to distribute" immediately after the term "possessing," Congress would have been compelled to repeat that phrase two more times—after "distributing" and "manufacturing." (Indeed, Congress probably would have been obligated to repeat the much longer phrase "in or on, or within one thousand feet of the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or within 100 feet of a public or private youth center, public swimming pool,

or video arcade facility.") Economical legislative drafting obviously dictates that such awkward repetition be avoided if at all possible. *See Roberts*, 735 F.Supp. at 539 n. 3. ("[J]ust because Congress did not see fit to repeat the phrase 'within 1000 feet of a school' three times in a single sentence when it certainly intended the enhancement to apply to 'distributing' and 'manufacturing' as well as to 'possessing', the placement of the modifier cannot be read to compel the [*Liranzo* court's] interpretation.")

2. The *Liranzo* court also relied (729 F.Supp. at 1014) on a statement made by the sponsor of the schoolyard statute, Senator Hawkins, when it was first proposed in 1984. As noted, the provision at the time applied only to the distribution of drugs, and therefore Senator Hawkins stated that the provision was intended to " 'deter drug distribution in and around schools.' " 130 Cong.Rec. S559. The provision was later broadened to apply to manufacturing (in 1986) and possession with intent to distribute (in 1988). However, the *Liranzo* court, overlooking the narrower scope of the provision in 1984, cited Senator Hawkins' statement to show that the statute in its present form does not apply to the possession of drugs in the absence of an intent to distribute the drugs within 1000 feet of a school. 729 F.Supp. at 1014. Obviously Senator Hawkins' description of the purpose of the version of the provision originally enacted in 1984 does not show that the 1986 and 1988 amendments adhered to the same narrow purpose.

3. Several cases, finding no clear indication of the meaning of the schoolyard provision in the statutory language or the legislative history, invoked the role of lenity. *Roberts*, 735 F.Supp. at 542–43; *Liranzo*, 729 F.Supp. at 1014. Rodriguez also places heavy reliance on the rule of lenity, but this rule is inapplicable to the question of statutory interpretation presented here. The rule comes into operation only after it is determined that a criminal statute is ambiguous, not at the beginning of the process of construction " 'as an overriding consideration of being lenient to wrong-

doers.'" *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991), *quoting Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961); *Gozlon–Peretz v. United States*, —— U.S. ——, 111 S.Ct. 840, 849, 112 L.Ed.2d 919 (1991). In a recent opinion, the Supreme Court was divided on the question whether legislative history should be consulted in determining whether a statute is ambiguous. *United States v. R.L.C.*, —— U.S. ——, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992). Four Justices believed that it should, *id.* at ——, 112 S.Ct. at 1337 (plurality), three Justices believed that it should not, *id.* at ——, 112 S.Ct. at 1339 (Scalia, J., concurring), and one Justice believed that legislative history should not but that caselaw should, *id.* at ——, 112 S.Ct. at 1341 (Thomas, J., concurring). We need not confront this issue because, as discussed above, our examination of the statute's plain language persuades us that no ambiguity exists, even without resort to legislative history.[7] In this case, the legislative history only confirms our view that the statute is unambiguous and that, therefore, the rule of lenity does not apply.

4. Finally, several district court opinions have hypothesized extreme cases to which the schoolyard statute might be applied if the statute did not require proof of an intent to distribute within 1000 feet of a school or other facility. For example, in *Coates*, 739 F.Supp. at 153, the court worried that the schoolyard statute might be applied to a defendant who speeds by a school in a train or other vehicle on the way to a narcotics sale.

The argument implicitly made by advancing such hypothetical cases appears to be the following. The schoolyard statute was intended to provide enhanced penalties for certain criminal conduct that poses an increased risk for students while in or near their schools. The hypothetical cases noted do not involve any such increased risk. If

the schoolyard statute is interpreted to require proof that a drug possessor intended to distribute drugs within 1000 feet of a school, these hypothetical cases would fall outside the reach of the statute. Therefore, the schoolyard statute should be interpreted in this way. We reject this reasoning.

No matter how interpreted, the coverage of the schoolyard provision would not correspond precisely with the class of cases involving increased risk to students. The interpretation adopted by these district courts—requiring proof that a drug possessor intended to distribute drugs within 1000 feet of a school—would make the statute inapplicable in several situations in which the mere possession of sizeable quantities of drugs near a school would create an increased risk for students. For example, Congress undoubtedly knew that the mere presence of substantial quantities of drugs increases the risk of gunfire and other violence. *See Wake*, 948 F.2d at 1433. In addition, a person possessing drugs may abandon them while fleeing from the police, as Rodriguez did here. The drugs may also be lost or stolen near a school and may then find their way into students' hands.

Furthermore, the interpretation of the schoolyard statute adopted by these district courts would still include some cases involving no increased risk to students. To take a hypothetical case perhaps no more fanciful than those cited in these courts' opinions, a drug smuggler, during a period when school is not in session, might possess a large quantity of drugs with the intent to sell them to a major buyer in an apartment at the top of a high-rise building that is located within 1000 feet of a school but is separated from the school by a limited access highway that cannot be crossed at any point nearby. The selection of this site for the transaction might not real-

---

7. The fact that other courts have construed this statute differently does not alter our conclusion. If we were to hold that the conflicting constructions of other courts require us to find a statute ambiguous, triggering the rule of lenity, we would, in effect, be holding that we are bound by those other courts' constructions; we do not, indeed, could not, so hold. *See Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990).

istically involve any increased risk to the school's students, but this conduct would still fall within the schoolyard statute even if proof of an intent to distribute within 1000 feet of a school were required. *See State v. Ogar*, 229 N.J.Super. 459, 551 A.2d 1037 (App.Div.1989) (similarly worded state schoolyard statute applies where defendant intended to distribute drugs in a jail located within 1000 feet of a school).

In short, the schoolyard statute, no matter how interpreted, involves some degree of imprecision. Therefore, in deciding whether to require proof that a drug possessor intended to distribute drugs within 1000 feet of a school, Congress had to decide whether (a) to require proof of such intent and thus make the statute inapplicable in the situations noted above in which the mere possession of sizeable quantities of drugs near a school would pose an increased risk to students or (b) to dispense with proof of such intent and thus make the statute applicable in a few situations, such as the hypothetical cases posed by some of the district court judges, involving no increased risk to students. We certainly cannot say that the latter choice is so clearly preferable that Congress must have selected that option. Therefore, we do not think that the extreme hypothetical cases cited in some of the district court decisions support those courts' interpretation of the schoolyard provision.[8]

We hold that the schoolyard statute applies to a defendant who possesses drugs within 1,000 feet of a school with the intent to distribute those drugs at any location.

Thus, we hold that the district court's jury instructions were not erroneous.

### III.

■ As previously noted, Rodriguez contends not only that the schoolyard statute required proof that she intended to distribute drugs near a school but also that the statute is unconstitutionally vague. For the reasons already explained, we do not think that the schoolyard statute as applied to Rodriguez's conduct is vague. "This is particularly so since whatever debate there is would center around the appropriate sentence, and not the criminality of the conduct." *Chapman*, — U.S. ——, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991). We therefore reject Rodriguez's vagueness argument. *See United States v. Rowe*, 911 F.2d 50, 51–52 (8th Cir.1990); *United States v. Cross*, 900 F.2d 66, 68 (6th Cir. 1990); *United States v. Holland*, 810 F.2d 1215, 1219 (D.C.Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Agilar*, 779 F.2d 123, 125–26 (2d Cir.1985), *cert. denied*, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986).

### IV.

■ Finally, Rodriguez argues that under Fed.R.Evid. 402[9] & 403,[10] the district court should not have allowed the two Philadelphia police officers who testified for the prosecution to refer at trial to a DEA file containing information about her. Rodriguez asserts that this testimony was irrelevant, and that it was unfairly prejudicial in that it implied that she had been involved in drug-related activities before

---

**8.** If a trial court is actually presented with one of these extreme cases, we believe the Sentencing Guidelines would generally permit the court to eliminate any unwarranted increase in the sentence that would otherwise be imposed. In most cases involving convictions under the schoolyard statute for possession with intent to distribute, the only effect of the schoolyard statute is a one or two-point increase in the offense level under U.S.S.G. § 2D1.2(a). If a case technically qualifies for such an increase but it is clear that the defendant's conduct did not create any increased risk for those whom the schoolyard statute was intended to protect, we believe that a one- or two-point downward departure to eliminate this increase would be permissible.

**9.** "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed.R.Evid. 402.

**10.** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

June 6, 1990.[11]

Rodriguez contends that the district court erred in admitting the following testimony:

*Prosecutor:* You testified that it [a photograph] came from the General File I believe your words were. Is that correct?

*Abel:* That's correct.

*Prosecutor:* What is the General File?

*Abel:* The General File is just a file that an Officer might open on information he receives from the telephone or an informant.

. . . . .

*Prosecutor:* So, was this—do you know when the General File was opened?

*Abel:* I don't.

*Prosecutor:* Was it opened at the same time that the information was first obtained, or could it have been even further before?

*Abel:* The information Officer Martinez obtained?

*Prosecutor:* Yes.

*Abel:* It was opened before the information Officer Martinez received.

*Prosecutor:* And that file that had existed before included this photograph?

*Abel:* Yes.

*Prosecutor:* And are you certain that you saw this photograph before June 6?

*Abel:* Positive.

App. at 70a–71a (re-direct examination).

We do not need to decide whether, standing alone, this testimony should have been excluded under Rule 403, for we find that Rodriguez had already "opened the door" during her cross-examination of Abel by asking him several questions regarding the contents of the DEA file:

*Defense:* Did you know [on June 6, 1990] that that person [the woman in the car] was Zaida Rodriguez?

*Abel:* . . . [B]ased on a photograph that was provided with our information, I did.

. . . . .

*Defense:* . . . Now is it your testimony under oath before these jurors that you had this photograph of Zaida Rodriguez and you had seen it before June 6, 1990?

*Abel:* Yes. It came from a General File at DEA.

. . . . .

*Defense:* . . . Where did you see that photograph before June 6, 1990?

*Abel:* In the possession of Gary Martinez, my partner.

. . . . .

*Defense:* . . . How did he [Martinez] get possession of that photograph, if you know?

*Abel:* I'm not sure. I'm pretty sure it came from the General File.

*Defense:* "General File." Well, how did it get into the General File? Did you put it in the General File?

*Abel:* No. Either Officer Martinez or Officer Cruz put it there.

App. at 64a–67a (cross-examination).

Rodriguez, attempting to put forth a defense of "mistaken identity," App. at 26a, wanted the jury to consider whether the woman in the photograph from which the policemen identified the defendant was the same woman seen by the policemen on June 6. To that end, defense counsel questioned Abel about the source of the photograph and about the physical differences between the woman in the photograph and the woman he saw on June 6. App. at 64a–68a. Clearly, after such a cross-examination, the prosecutor was entitled on re-direct to address the identical issues. App. at 70a–74a. Accordingly, we find no plain error.[12] *See Edwards v. City of Philadelphia,* 860 F.2d 568, 576 (3d Cir.1988).

---

**11.** This argument, too, was not raised in the district court, and we therefore review only for plain error.

**12.** For similar reasons, we find that the district court did not commit plain error by admitting testimony by Officer Martinez regarding the DEA file as the source of the photograph.

V.

For the reasons stated above, the judgment of the district court will be affirmed.