<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1670

                         UNITED STATES,

                           Appellee,

                               v.

                    REYNALDO JEREMIAS ORTIZ,

                     Defendant - Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                Campbell, Senior Circuit Judge,

                   and Stahl, Circuit Judge.

                     _____________________

   Rafael F. Castro-Lang, by appointment of the Court, for
appellant.
   Antonio R. Bazn, Assistant United States Attorney, with whom
Guillermo Gil, United States Attorney, was on brief for appellee.

                      ____________________

                        June 12, 1998
                      ____________________

           TORRUELLA, Chief Judge.  Defendant Reynaldo Jeremas
Ortiz ("Ortiz") appeals his four-count conviction for the illegal
possession of narcotics and a firearm which were seized from his
residence in Guayama, Puerto Rico while police executed a warrant
for his arrest.  Ortiz was sentenced to 240 months of imprisonment
and 10 years of probation for the first two counts and 60 months of
concurrent imprisonment and 3 years of concurrent probation for the
remaining counts.
         Ortiz claims that the district court committed two
errors.  First, he argues that his lawyer provided ineffective
counsel by failing to move to suppress the narcotics and firearm
evidence.  Second, he asserts that he cannot be convicted of
possession with intent to distribute drugs within 1,000 feet of a
school simply because he possessed such substances in his residence
within such a distance from a public middle school.  We conclude
that neither point is well taken and thus affirm his conviction.
                         I.  BACKGROUND     On appeal, we view the evidence in the light most
favorable to the jury's verdict.  See United States v. Rosen, 130
F.3d 5, 6 (1st Cir. 1997).  We conclude that the jury could have
found the following facts.
         On June 20, 1996, a Puerto Rico judge found probable
cause to believe that Ortiz had engaged in a conspiracy to commit
murder and issued a warrant for his arrest.  On that same date,
agents of the Puerto Rico Department of Justice executed the arrest
warrant at Ortiz' parents' residence in Guayama, Puerto Rico, which
was located approximately 150 feet from the Genaro Cautio Public
Middle School.  Ortiz lived in a small house, approximately 10 feet
wide by 10 feet long, behind the main residence.  The agents
knocked on his door and identified themselves as police.  When the
defendant opened the door, the arrest team physically restrained
the suspect on his bed and handcuffed him.
         Next to the bed, agents found a small plastic bag
containing vials of what was later discovered to be cocaine base,
commonly known as crack cocaine.  One of the agents searched a
dresser, which was to the left hand-side of the bed, and found a
pistol and a bag of cocaine in the first drawer.  The gun was a
nickel-plated Smith and Wesson pistol with 15 rounds of ammunition
in the magazine and a bullet in the chamber.  Its serial numbers
had been removed.  The agent also searched a plastic shopping bag
on top of the dresser, and discovered additional vials of crack
cocaine.
         The weapon and narcotics evidence was the basis of a
four-count federal indictment against Ortiz.  Counts One and Two
charged Ortiz with possession with intent to distribute varying
amounts of narcotics within 1,000 feet of a public school in
violation of 21 U.S.C.  841(a) and 860(a).  Counts Three and
Four, respectively, charged appellant with the felonious possession
of a firearm in violation of 18 U.S.C.  922(g), and possession of
a firearm with an obliterated serial number in violation of 18
U.S.C.  922(k).  He was tried and convicted on all counts.  Ortiz
appeals.

                        II.  DISCUSSION     A.  Ineffective Assistance of Counsel
         Ortiz alleges he received ineffective assistance of
counsel because his trial lawyer failed to file a motion to
suppress the weapon and narcotics evidence despite the defendant's
specific request that the attorney do so.  We do not ordinarily
consider ineffective assistance of counsel claims on direct appeal.  
See United States v. Martnez-Martnez, 69 F.3d 1215, 1225 (1st
Cir. 1995).  However, "where the critical facts are not genuinely
in dispute and the record is sufficiently developed to allow
reasoned consideration of an ineffective assistance claim, an
appellate court may dispense with the usual praxis and determine
the merits of such a contention on direct appeal."  United Statesv. Natanel, 938 F.2d 302, 309 (1st Cir. 1991).
         Ortiz' case falls within this exception.  The record
reflects that the appellant, on several occasions, requested that
the district court dismiss his counsel and appoint another attorney
to represent him due to the defense attorney's failure to file a
motion to suppress the narcotics and firearm evidence.  In two
instances, Ortiz directly addressed the district court regarding
this issue.  On February 3, 1997, the date of the jury trial, he
stated to the court, "I want to be assigned another attorney to
represent me. . . .  I have asked for [my lawyer] to file some
motions that he has refused to file. . . ."  On April 30, 1997, the
date set for sentencing, Ortiz again complained of his attorney's
failure to pursue what the appellant viewed as his only defense.
         Our review of the record shows that, on both occasions,
the district court refused to dismiss defense counsel because his
attorney had determined that "a motion to suppress would be
frivolous, under the present state of the law."  Relying
substantially on Chimel v. California, 395 U.S. 752 (1969), defense
counsel determined that the agents had conducted a valid search of
Ortiz' premises incident to a lawful arrest.  Thus, appellant's
attorney made a conscious decision not to file the motion based on
his legal research.  Neither party suggests that we need to engage
in further factfinding.  Cf. Natanel, 938 F.2d at 309 (reaching
ineffective assistance claim where counsel's alleged omission was
straightforward and additional factfinding was not required).  
Under these circumstances, we find that the record is sufficiently
developed to entertain Ortiz' ineffective assistance claim.
         The Sixth Amendment right to counsel includes the right
to the effective assistance of counsel.  See Strickland v.
Washington, 466 U.S. 668, 686-87 (1984).  To prevail on his claim,
Ortiz must show that his attorney's performance not only was
deficient, but also prejudiced his defense.  See id. at 687.  We
hold that appellant's counsel's conduct was within the "wide range
of reasonable professional assistance."  Id. at 689.  In applying
the performance standard, "we examine what counsel 'knew, or should
have known, at the time his tactical choices were made and
implemented.'"  United States v. Georgacarakos, 988 F.2d 1289, 1298
(1st Cir. 1993) (citing Natanel, 938 F.2d at 309).  Our analysis,
then, turns on whether, in his decision to forego filing the
suppression motion, defense counsel's reliance on Chimel v.
California, 395 U.S. 752 (1969), was so misplaced as to constitute
deficient performance.
         In Chimel, three California police officers executed an
arrest warrant for a burglary suspect, Ted Steven Chimel, at the
suspect's home.  Over Chimel's objections, the officers searched  
his entire three-bedroom house, and seized numerous items, which
were later admitted into evidence against the defendant.  The
entire search took approximately 45 minutes to an hour to complete.  
The Supreme Court reversed Chimel's conviction, holding that the
search of the defendant's entire house unreasonably extended beyond
the defendant's person and area from which he might have obtained
either a weapon or destroyed evidentiary items.  See id. at 762-63.
The Chimel court noted, however, that "[t]here is ample
justification [] for a search of the arrestee's person and the area
'within his immediate control'--construing the phrase to mean the
area from which he might gain possession of a weapon or
destructible evidence."  Id. at 763.
         In the instant case, Ortiz was detained within the
confines of a room, which was no larger than 10-feet wide by 10-
feet long.  In such a small space, items on top of and inside
Ortiz' chest of drawers as well as next to his bed were all within
the suspect's grab area.  Moreover, it is important to note that
the agents were executing an arrest warrant for a violent crime,
conspiracy to murder.  In our view, it was reasonable for the
agents to conduct a protective sweep of the room, and Chimelappears to support that conclusion.  Thus, appellant's counsel had
a legitimate basis, in light of Chimel, for not filing the
suppression motion.
         We are, of course, addressing an ineffective-assistance-
of-counsel claim rather than deciding whether, as a matter of law,
Puerto Rico police conducted a valid search incident to a lawful
arrest.  Our scrutiny of counsel's performance must be "highly
deferential."  Strickland, 466 U.S. at 689.  We find that counsel's
conduct was well within the acceptable range of reasonable
professional assistance.  The defense attorney decided against
filing a motion he reasonably believed would be of no benefit to
his client.  Accordingly, we rule that Ortiz' ineffective
assistance claim is without merit.
         B.   Schoolyard Statute
         Ortiz argues that the trial evidence failed to support
his conviction under 21 U.S.C.  841(a)(1) and 860(a) for
possession of a controlled substance with intent to distribute
within 1,000 feet of a public school.  Section 860(a), commonly
known as the schoolyard provision of the federal drug laws,
provides enhanced penalties for:
           Any person who violates section 841(a)(1)
           or section 856 . . . by distributing,
           possessing with intent to distribute, or
           manufacturing a controlled substance in or
           on, or within one thousand feet of, the
           real property comprising a public or
           private elementary, vocational, or
           secondary school. . . .

21 U.S.C.  860(a).  According to Ortiz, the statute requires proof
that the defendant intended to distribute or that he actually
distributed narcotics within 1,000 feet of the middle school
located near his parents' residence.  Since the government
presented no evidence that Ortiz had such an intent, appellant
asserts that we must reverse his conviction on the first two
counts.  We engage in de novo review of questions of law.  United
States v. Fernndez, 121 F.3d 777, 778 (1st Cir. 1997).
         While this court has yet to address the issue presented
here, three other courts of appeals have held that the enhanced
penalty under  860(a) applies to a defendant who with intent to
distribute possesses narcotics in a school zone even if he or she
intends to distribute the drugs there or elsewhere.  See United
States v. McDonald, 991 F.2d 866, 868-70 (D.C. Cir. 1993); United
States v. Rodrguez, 961 F.2d 1089, 1092-95 (3d Cir. 1992); United
States v. Wake, 948 F.2d 1422, 1431-33 (5th Cir. 1991).  We agree
with our sister circuits.
         The language of  860(a) supports the conclusion that the
statute punishes drug possession with intent to distribute near a
school, whether or not the intended target for distribution is
within the area surrounding the school.  As both the Third and
District of Columbia Circuits have noted, "[the] provision applies
to three types of criminal conduct: distributing drugs, possessing
drugs with the intent to distribute, and manufacturing drugs."  
Rodrguez, 961 F.2d at 1092; see also McDonald, 991 F.2d at 869.  
Clearly,  860(a) requires the actus reus for each offense, i.e.,
distributing drugs, possessing drugs with the intent to distribute,
and manufacturing drugs, to occur within 1,000 feet of a school.  
Since the actus reus for possession with intent to distribute is
possession, "it follows that possession of the drugs, not the
intended location for distribution, must be located within 1,000
feet of a school."  See 961 F.2d at 1092.
         Ortiz cites decisions in several district court cases to
support his contention that the provision reaches only those who
intend to distribute narcotics within a school zone.  See United
States v. Testa, 768 F. Supp. 221, 222-23 (N.D. Ill. 1991); United
States v. Coates, 739 F. Supp. 146, 152-53 (S.D.N.Y. 1990); United
States v. Liranzo, 729 F. Supp. 1012, 1013-14 (S.D.N.Y. 1990).  The
Liranzo court argues that rules of grammar require that "within one
thousand feet" modify "with intent to distribute" rather than
"possessing."  See 729 F. Supp. at 1014.  According to the court,
if Congress had intended a different meaning,  860(a) would have
read:  "'possessing, within one thousand feet of a school, with
intent to distribute a controlled substance . . . .'" Id.  However,
as the Third Circuit aptly observes, the geographic element
modifies "distributing" and "manufacturing" as well as "possessing
with intent to distribute."  See 961 F.2d at 1093.  Thus, if
Congress had drafted the provision as the Liranzo court suggests,
it would have had to repeat the "within one thousand feet" language
two more times after "distributing" and "manufacturing."  See id.  
"Economical legislative drafting dictates that such awkward
repetition be avoided if at all possible."  Id.  Therefore, we
disagree with the Liranzo court's interpretation.
         The facts of the three district court cases cited by
Ortiz strongly suggest that the defendants in those cases did not
intend to distribute drugs within a school zone and that the
existence of drugs within the zone was the product only of unlucky
circumstances.  See Testa, 768 F. Supp. at  222-23 (drugs merely
stored in stash house near public high school); Coates, 739 F.
Supp. at 153 (possession of cocaine on board a train at train
station located close to technical school); Liranzo, 729 F. Supp.
at 1013 (drug possession at bus terminal located within 1,000 feet
of private elementary school).  Accordingly, these courts argue
that, if  860(a) were read to require only that the place of
possession be within a school zone, regardless of the place of
intended distribution, the statute would unfairly sweep into its
ambit cases involving no increased risk to students.
         However, "[n]o matter how interpreted, the coverage of
the schoolyard provision would not correspond precisely with the
class of cases involving increased risk to students."  Rodrguez,
961 F.2d at 1094.  If we require proof of intent to distribute only
within the school zone, as these district courts did, the statute
would exclude many cases where the presence of drugs, in fact,
increased the risk of harm to students.  In view of the danger that
the mere presence of drugs near a school presents, the district
courts' interpretation would provide an escape-hatch for a
defendant when, as here, the government is unable to establish
precisely where the drugs were meant to be distributed, thereby
defeating the intent of Congress.  In many such cases, school zone
distribution may even be intended but proving this may be
difficult.  Certainly, the mere existence of a large quantity of
drugs in an area increases the possibility of gang warfare and
gunfire and other drug-related violence in that vicinity.  See id.
Moreover, the interpretation espoused by these district court cases
is vulnerable to other imprecisions as well.  We can well imagine
a situation where a defendant intends to distribute drugs within a
school zone, but at that time, school is no longer in session.  See991 F.2d at 870.  In such a circumstance, the district courts'
interpretation would also sweep into its net defendants who did not
pose any threat to students.  As the Court of Appeals for the
District of Columbia notes:
           Legislatures undoubtedly estimate the
           malignity of an offense, not merely by
           assessing the harm produced by a single
           act, but by considering the general alarm
           and anxiety offenses of this sort can be
           expected to cause. . . . [P]articular
           instances in which no greater fear or
           insecurity could arise from the crime's
           proximity to a school thus fail to take
           into account the generalities on which
            860 quite properly rests.

Id.  Consequently, we find the district court rulings discussed
above to be unpersuasive.
         Ortiz also contends that the rule of lenity mandates that
we adopt his interpretation of the provision.  While Ortiz'
interpretation of  860(a) is arguably plausible, "it is not cogent
for the reasons we have given.  Whatever uncertainty of meaning
exists, it is far from 'grievous,' an essential condition for
applying the canon."  McDonald, 991 F.2d at 870-71 (citing Chapmanv. United States, 500 U.S. 453 (1991)).  Finally, the appellant
claims that, in his case, where the possession of narcotics near a
schoolyard was purely coincidental, the enhancement under the
provision violates the Eighth Amendment prohibition against
penalties that are grossly disproportionate to the crime.  We see
no merit to this claim.  "[T]he determination of sentences is
primarily a legislative prerogative."  United States v. Gonzles,
121 F.3d 928, 942 (5th Cir. 1997).  Thus, successful challenges to
the proportionality of punishments are "exceedingly rare."  
Harmelin v. Michigan, 501 U.S. 957, 1001 (1991).  Here, Ortiz'
punishment under  860(a) was not so grossly disproportionate as to
violate the Eighth Amendment.
                       III.  CONCLUSION
         For the foregoing reasons, we affirm Ortiz' conviction on
all counts.

</body>

</html>