NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1991

_____

UNITED STATES OF AMERICA

v.

CARLTON L. EASTER,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 1-07-00153-001)
Honorable Sylvia H. Rambo, District Judge

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2010

_____

BEFORE: MCKEE, BARRY, and GREENBERG, Circuit Judges

(Filed: March 30, 2010)

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

This matter comes on before the Court on defendant Carlton L. Easter's

(hereinafter "Easter") appeal from a judgment of conviction and sentence entered on

April 1, 2009, in this crack cocaine case. At a trial with Jamel E. Easter and Joseph Moore as co-defendants, the jury found Easter guilty of possession with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 841(a) (Count II) and of conspiracy to possess with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 846 (Count IV). After his conviction Easter filed motions challenging his convictions on the ground that the verdicts were against the weight of the evidence and the evidence was insufficient to support the verdict. The District Court denied these motions and sentenced Easter to concurrent custodial terms of 210 months on each count to be followed by five-year concurrent terms of supervised release.

Easter appeals, contending that the government did not prove all of the elements of each of the two offenses beyond a reasonable doubt. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

The case arose from a reverse sting in which Jamel E. Easter, one of Easter's co-conspirators, attempted to purchase crack cocaine from an informant working with the FBI. Though Jamel Easter originally told the informant that he wanted to purchase 18 ounces of crack, he subsequently told the informant that he needed only nine ounces. The informant notified the FBI of Jamel Easter's attempt to purchase the drug and the government arranged a sting to ensnare him. Jamel Easter drove to the site for the delivery in Harrisburg, Pennsylvania, in an automobile with three other occupants, Easter,

2

Joseph Moore and another male who has not been apprehended but who has been identified as Victor Patterson.

The informant was waiting at the site and got into the automobile but Easter then observed law enforcement officers in the area that he believed were conducting surveillance. When he told the automobile's other occupants of his observations, Jamel Easter moved the automobile to another location. Then Easter gave the informant $6,000 in cash and said that the drugs were being purchased for him. After the informant with Moore's help counted the money, FBI and local officers attempted to arrest the automobile's occupants, but Jamel Easter initially frustrated that attempt by driving away. During the automobile flight Moore, who had possession of a .40 caliber Glock pistol, threw it to Jamel Easter who took control of it.

The automobile flight was not successful for as Jamel Easter drove the automobile away it was damaged rendering it inoperable. Then Jamel Easter, Moore, and Patterson left the automobile and continued to flee. When the automobile's other occupants fled, Easter, who had been disabled in an earlier incident, remained behind. While fleeing on foot Jamel Easter hid the pistol and a bag that he was carrying in a ditch. The officers recovered the pistol and the bag that Jamel Easter had hidden which contained 83.7 grams of crack cocaine and a digital scale. The officers also searched Jamel Easter's automobile and found a bag in the back seat containing 4.7 grams of crack, a box of sandwich bags, and some marijuana. Though Patterson escaped, the pursuing officers arrested Jamel

3

Easter and Moore who sought refuge in an abandoned house. Other officers arrested Easter.

There is no doubt but that the evidence plainly showed that Easter was part of a conspiracy to possess with intent to distribute 50 grams and more of crack cocaine. As we explained in United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001), and United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999), two cases the parties cite, to prove that there was a criminal conspiracy the government must establish that the co-conspirators had a unity of purpose, an intent to achieve a common goal, and an agreement to work together toward that goal. In assessing the adequacy of the evidence we review the evidence in the light most favorable to the government as the verdict winner and consider both direct and circumstantial evidence. See United States v. Wert-Ruiz, 228 F.3d 250, 256 (3d Cir. 2000). Here, though Jamel Easter arranged for the purchase of the crack, when the transaction supposedly was being completed Easter said the drugs were for him. Furthermore, Easter demonstrated that he had a major role in the conspiracy by being involved in the transfer of the cash to pay for the drugs and by identifying law enforcement officers in the vicinity when Jamel Easter initially stopped the automobile. Moreover, the nine ounces of crack that the conspirators ultimately attempted to purchase was far in excess of the 50 grams charged in the indictment and was so great a quantity that it is reasonable to infer that they were purchasing it for distribution rather than for personal use. See United States v. Rodriguez, 961 F.2d 1089, 1092 (3d Cir. 1992).

4

Plainly the evidence supported Easter's conspiracy.

Similarly the evidence of Easter's possession of the crack was adequate to establish that Easter was guilty on the count charging possession with intent to distribute crack. For the government to prove that Easter was guilty on that count it was required to establish that Easter knowingly possessed or constructively possessed the crack cocaine and did so with the intent to distribute it. Here Easter was intimately involved in the crack transaction and was attempting to purchase crack from the informant. Though Jamel Easter had physical possession of the crack that he brought to the purchase and discarded during his flight, the evidence supported the conclusion that the passengers in the automobile were cooperating in a crack business. Consequently it was reasonable for the jury to infer that the passengers, including Easter, had dominion and control constructively through the other conspirators over the crack that they already had acquired and was part of their inventory. See United States v. Martorano, 709 F.2d 863, 866 (3d Cir. 1983). Thus, the evidence supported the possession charge against Easter.

With respect to constructive possession we point out that the District Court instructed the jury that:

> If an individual has the ability to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item. An example of this from every day experience would be a person's possessions [sic] of items which he keeps in a safety deposit box in his bank. Although the person does not have physical custody of these items, he exercises substantial control over them, so he has what is known as constructive possession of them.

5

App. at 544-45.  Accordingly, the jury was free to consider the constructive possession theory of the possession with intent to distribute charge, and, as we explained in Martorano, could predicate a conclusion that Easter constructively possessed the crack based on the ample circumstantial evidence against him.  See 709 F.2d at 866.

For the foregoing reasons the judgment of conviction and sentence entered April 1, 2009, will be affirmed.