NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4090
_____

UNITED STATES OF AMERICA

v.

CHARLES LAMONT TOLER,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cr-00728)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed:  September 20, 2011)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

        Charles Lamont Toler appeals a number of issues arising from his trial, conviction,

and sentencing.  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history. Although Toler urges us to second-guess the jury's credibility determinations, and reweigh the evidence and the inferences drawn therefrom, we recite the facts in the light most favorable to the Government in light of the jury's verdict. *See United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008).

In January 2009, a reliable confidential informant told the Drug Task Force in Delaware County, Pennsylvania, that Toler was selling cocaine from an apartment leased to Toler's mother. Led by veteran Police Officer Edward Rosen, the Task Force surveilled the apartment and confirmed that Toler entered it regularly, sometimes coming and going several times in one day. The Task Force also arranged for the informant to make two controlled purchases of cocaine from Toler. On both occasions, Toler went to the apartment before and after the transaction.

Officer Rosen obtained a search warrant for Toler's person and car, as well as his mother's apartment. It authorized the seizure of drugs, drug paraphernalia, proof of residency and control, money, transaction records, and weapons. The following day, officers executed the warrant, arresting Toler as he exited the apartment. A search of Toler's person turned up 31.7 grams of cocaine and $1,620 in cash. Toler then provided a key to the apartment, and the officers and Toler went inside.

Inside the apartment, Rosen directed Toler to sit on a couch in the living room. Rosen read Toler his *Miranda* rights, and Toler indicated that he understood and waived

them.  As the officers began to search the residence, Rosen asked Toler if there was cocaine in the apartment, and Toler directed the officers to a bedroom closet.  Asked a second time, Toler also gestured towards a safe, which he told Rosen contained more cocaine and a gun.  In the closet, officers found 766.2 grams of cocaine, as well as several boxes of Ziploc bags, digital scales, latex gloves, coffee filters, a razor blade, and a jar of a common cutting agent called inositol.  In addition, they found Toler's personal papers, including his birth certificate, Social Security card, paternity papers, and photographs.  Once finished in the bedroom, Rosen asked Toler for the combination to the safe, which Toler recited from memory.  Inside the safe, officers found another 37.3 grams of cocaine, $5,795 in cash, and a Smith & Wesson .40 caliber handgun.  In total, 835.2 grams of cocaine were recovered from Toler and the apartment.  During a subsequent search of Toler's car, Rosen found a small notebook with lists of names and numbers, described by Rosen as a "tally sheet."

While the evidence was being collected, several officers spoke with Toler.  Looking "defeated," Toler explained that he knew "he had to get out of the game" but admitted to recently purchasing a kilogram of cocaine for $39,000, the resale of which was going to be "his last run."  Toler also told Rosen that although the apartment belonged to his mother, all of the items seized belonged to him.

Toler was charged with four counts: possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); possession with intent to distribute 500 grams or more of cocaine in or near a school zone, in violation of

3

21 U.S.C. § 860(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He went to trial in May 2010, and a jury found him guilty on all four counts. The District Court calculated Toler's sentencing range under the United States Sentencing Guidelines (USSG) and determined that his total offense level of 37, criminal history category of VI, and career offender status resulted in an advisory range of 420 months to life in prison. The Court imposed a sentence of 420 months—a mandatory 60-month sentence on the § 924(c) offense consecutive to a 360-month sentence for the drug and § 922(g) offenses—followed by eight years of supervised release and a special assessment of $400.

## II

Although Toler raises a grab bag of issues relating to every phase of the proceedings, none is worthy of extensive discussion.

First, Toler concedes that two of his arguments—his contentions that (1) the District Court erred in instructing the jury on the § 860(a) count and (2) his criminal history category should not have accounted for crimes to which he pleaded guilty because a jury never actually found him guilty—are contrary to this Court's precedent. Appellant's Br. at 49, 60 n.33 (citing *United States v. Rodriguez*, 961 F.2d 1089, 1091–93, 1095 (3d Cir. 1992) and *United States v. Ordaz*, 398 F.3d 236 (3d Cir. 2005)).

Toler's remaining claims fare no better. The District Court's decisions to admit Toler's statements to officers at the apartment, the items seized from his person, and the

items seized from the safe were all proper in light of the evidence that Toler was informed of and voluntarily waived his *Miranda* rights, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and that the searches were within the scope of a valid search warrant, *see* App. 946, 955; *United States v. Ross*, 456 U.S. 798, 821–22 (1982). Moreover, the Court's admission of audio tapes of Toler's prison telephone conversations with his sister was proper because there was "clear and convincing evidence" that Toler was the speaker, *see United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975) (internal quotation marks and citation omitted), and the tapes, though quite damaging to Toler's case, were not unfairly prejudicial, *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980).[1]

The District Court also acted well within its discretion in denying Toler's motion to disclose the name of the Government's confidential informant. Toler offered, and continues to offer, nothing more than "mere speculation" that disclosure would be helpful, which is "not sufficient" to override the government's privilege to withhold the identity of an informant. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981); *see Roviaro v. United States*, 353 U.S. 53, 59 (1957).

All of Toler's sufficiency-of-the-evidence arguments ask us to reassess the evidence presented at trial. As an appellate court, we are not at liberty to make such factual findings. Rather, we review the record only to ensure that the evidence, when

---

[1] We acknowledge the Government's argument that *Starks* was abrogated by Federal Rule of Evidence 901(a), which requires a lesser showing to authenticate evidence. However, because the Government in this case met even the higher "clear and

"'consider[ed] . . . in the light most favorable to the government,'" was sufficient for "'any rational trier of fact [to] find guilt beyond a reasonable doubt.'" *Iglesias*, 535 F.3d at 155–56 (quoting *United States v. Lore*, 430 F.3d 190, 204 (3d Cir. 2005)). We find that the evidence was sufficient to support the verdict on every count. Although much of the evidence was circumstantial—*e.g.*, the proximity of the drugs and gun to Toler's personal documents, suggesting they all belonged to him; Toler's knowledge of the safe's combination, suggesting that he had knowledge of its contents; Toler's possession of Ziploc bags, scales, a cutting agent, etc., suggesting he intended to distribute the drugs; the proximity of the gun to the drugs, suggesting the gun was intended to be used to protect the drugs—such evidence is enough to overcome a sufficiency challenge. *See id.* at 156. Moreover, the circumstantial evidence offered by the Government's experts was both admissible and adequate to support the intended inferences—*i.e.*, that the evidence found in Toler's possession was consistent with what one would expect to find in the apartment of a drug distributor, and that the gun was a real Smith & Wesson that traveled across state lines. *See* FED. R. EVID. 703, 704; *United States v. Watson*, 260 F.3d 301, 308–09 (3d Cir. 2001).

Finally, we are satisfied that the District Court's sentence was reasonable. The District Court followed the three-step process of *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006), and gave "rational and meaningful consideration [to] the factors

convincing evidence" standard, we need not comment on the relationship between *Starks* and Rule 901.

6

enumerated in 18 U.S.C. § 3553(a)" as required by *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc). Taking into account Toler's background—both his difficult childhood and his extensive criminal history—the District Court imposed a sentence at the low end of the Guidelines range, which was an eminently reasonable choice. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

In sum, nothing in the record leads us to conclude that the District Court made any clearly erroneous factual findings, erred in its interpretations or applications of the law, abused its discretion, or otherwise acted unreasonably in any way.

### III

For the foregoing reasons, we will uphold the jury's verdict and affirm the District Court's rulings, instructions, and sentence.